**FILED**

UNITED STATES DISTRICT COURT
DENVER, COLO.

**JUN 27 2006**

05CV1495-AP

GRE     ANGHAM

Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Court's homepage at
http://www.courts.state.co.us/supct/supctcaseannctsindex.htm
and are posted on the Colorado Bar Association homepage at
www.cobar.org.

ADVANCE SHEET HEADNOTE
June 26, 2006

**No. 05SA316, In re Phillips** – Piercing the Corporate Veil –
**Reverse Piercing the Corporate Veil – Outside Reverse Piercing –
Inside Reverse Piercing – Alter Ego Doctrine**

In this certified question, the Supreme Court reviews

whether Colorado law permits a court to reverse pierce the

corporate veil. Reverse piercing occurs when a claimant seeks

to disregard the corporate form to obtain the assets of a

corporation due to the actions of a dominant shareholder or

other corporate insider.

Two types of reverse piercing exist: inside and outside.

Due to the facts of the case, the Supreme Court limits its

review to outside reverse piercing. Outside reverse piercing

occurs when a corporate outsider seeks to disregard the

corporate form and attach liability on the corporation for the

obligations of a dominant shareholder or other corporate

insider.

While the Supreme Court has not previously addressed

outside reverse piercing, Colorado law does permit traditional

veil piercing. Traditional piercing penetrates the corporate

fiction to impose liability on individual shareholders for the obligations of the corporation.

The Supreme Court holds that Colorado law permits outside reverse piercing the corporate veil due to the similarities in purpose between traditional veil piercing and outside reverse piercing. A court may outside reverse pierce the corporate form when (1) the controlling insider and corporation are alter egos of each other, (2) justice requires recognizing the substance of the relationship over the form because the corporate fiction is utilized to perpetuate a fraud or defeat a rightful claim, and (3) an equitable result is achieved.

Accordingly, the Supreme Court answers the certified question in the positive.

| | |
|---|---|
| SUPREME COURT, STATE OF COLORADO<br>Two East 14th Avenue<br>Denver, Colorado 80203<br><br>Certification of Question of Law Pursuant to<br>C.A.R. 21.1<br>United States District Court for the District of<br>Colorado, No. 05CV1495-AP<br>On Appeal from the United States Bankruptcy Court<br>for the District of Colorado, No. 02-29116 EEB,<br>Chapter 7 | Case No. 05SA316 |

In re:

**Debtor:**

PHILLIP EUGENE PHILLIPS,

**Plaintiff-Appellant:**

TOM H. CONNOLLY, Chapter 7 Trustee,

v.

**Defendants-Appellees:**

ENGLEWOOD POST NO. 322 VETERANS OF FOREIGN WARS OF THE UNITED STATES, INC.; MARGARET M. PHILLIPS; TROY BRACKEEN; RAMONA BRACKEEN; PHILSAX INCORPORATED; ACTION PROPERTIES, INC.; and PHILLIP EUGENE PHILLIPS.

CERTIFIED QUESTION ANSWERED
EN BANC
June 26, 2006

Weinman & Associates, P.C.
Jeffrey A. Weinman
William A. Richey
    Denver, Colorado

    Attorneys for Plaintiff-Appellant

John A. Cimino
Daniel F. Lynch
     Denver, Colorado

     Attorneys for Phillip Eugene Phillips

JUSTICE MARTINEZ delivered the Opinion of the Court.
JUSTICE EID dissents, and JUSTICE RICE and JUSTICE COATS join in
the dissent.

Pursuant to C.A.R. 21.1, we agreed to answer a certified question of law posed to us by the United States District Court for the District of Colorado. The federal district court requested a determination of whether Colorado law recognizes the so-called reverse piercing of the corporate veil doctrine. Reverse piercing occurs when a claimant seeks to disregard the separate existence of a corporation and obtain the assets of the entity due to the actions of a dominant shareholder or other corporate insider. Zahra Spiritual Trust v. United States, 910 F.2d 240, 244 (5th Cir. 1990).

We have not previously considered whether reverse piercing is appropriate under Colorado law. Colorado does permit traditional piercing of the corporate veil, however, in extraordinary circumstances. Leonard v. McMorris, 63 P.3d 323, 330 (Colo. 2003). Traditional piercing occurs when a trial court disregards the corporate form and attaches liability on individual shareholders for the obligations of the corporation. Contractors Heating & Supply Co. v. Scherb, 163 Colo. 584, 587-88, 432 P.2d 237, 239 (1967).

While some different considerations color the unique types of piercing, traditional veil piercing and allowing a corporate outsider to reverse pierce the corporate form are substantially similar and both serve the purpose of achieving an equitable result. Accordingly, we determine that a corporation, in

3

limited circumstances, may be liable for the debts of a controlling shareholder or other corporate insider where the shareholder or insider treated the corporation as his alter ego to perpetuate a fraud or defeat a rightful claim and an equitable result is achieved by piercing.

## I.   Facts and Procedural History

Appellant, Tom Connolly, is the Chapter 7 Bankruptcy trustee of Debtor Phillip Eugene Phillips's bankruptcy estate. In that capacity, Appellant seeks to avoid certain transfers of real and personal property owned by Debtor and transfers of real and personal property owned by Philsax, Inc. ("Philsax"), a Colorado corporation.   Prior to the property transfers, Debtor was the dominant and controlling shareholder of Philsax.   To avoid the transfers made by Philsax and keep the property in the bankruptcy estate, Appellant seeks to show that Philsax is the alter ego of Debtor and, therefore, actions taken by the corporation were, in effect, actions taken by the Debtor.   The United States Bankruptcy Court for the District of Colorado dismissed Appellant's claim.   The bankruptcy court held that absent clear Colorado precedent allowing reverse piercing, the court would not disregard Philsax's corporate status and invalidate the transfers.

Appellant appealed to the United States District Court for the District of Colorado.   Pursuant to Rule 21.1, Appellant also

sought certification of a question of law to this court.   Judge
John L. Kane certified the question of law to this court.

### A.   Facts Contained in the Certification Order

The United States District Court set forth its
understanding of the facts relevant to the question as required
by Rule 21.1(c)(2).  This information was taken from a default
judgment against Debtor in an adversary proceeding before the
bankruptcy court.  We recite these facts here to give context
for the certified question.

Prior to May 2000, Debtor was the principal shareholder of
Philsax, holding 5100 or 51% of the outstanding shares.  His
wife, Margaret M. Phillips, owned the remaining 4900 or 49% of
the remaining shares.  Debtor also owned 51% of Action
Properties, Inc. ("Action Properties"), prior to his November
2002 bankruptcy petition.  Margaret M. Phillips owned the
remaining Action Properties shares.

Although Margaret M. Phillips was the only other
shareholder, officer, and director of Philsax and Action
Properties, she could not testify as to her role in either
corporation nor could she explain her duties or obligations as a
director or officer in the entities.

While incorporated, Philsax had no bank account, no written
bylaws, and maintained no written financial statements.  Philsax

failed to provide written notice of the board of directors meetings and the Debtor removed and added directors at will.

Philsax's primary asset was the ownership of Parcel A and Parcel B, two parcels of real property in Arapahoe County. In early March 2000, Philsax entered into a written agreement to sell a 99.99% interest in Parcel A with the Veterans of Foreign Wars of the United States Post No. 32 ("VFW").

Although Philsax owned Parcel A, VFW executed a Promissory Note for approximately $260,000.00 to Margaret M. Phillips at the closing. VFW also provided Margaret M. Phillips and Action Properties with a check for approximately $90,000.00. Troy Brackeen, the Commander of the VFW, and Debtor, a member of the VFW, executed the check on behalf of the VFW. The VFW also made monthly payments to or for the benefit of Margaret M. Phillips.

At a March 8, 2000, special meeting of the board of directors of Philsax, Parcel B was transferred to Margaret M. Phillips and Action Properties. On March 13, 2000, the Philsax board of directors held a second special meeting. During the meeting, Debtor received approximately $90,000.00 for the transfer of 2000 shares to Troy Brackeen and 2000 to Troy Brackeen's wife, Ramona Brackeen. Ramona Brackeen is a niece by marriage of Debtor. Debtor also transferred 300 shares to Margaret M. Phillips, making her the majority shareholder of

Philsax.  Debtor used the money to pay personal expenses and transferred the remainder to Troy Brackeen.

A quit claim deed dated March 15, 2000, purportedly transferred VFW's 99.99% interest in Parcel A and Philsax's 0.01% interest in Parcel A to Margaret M. Phillips.  Troy Brackeen and John Greenway signed the deed on behalf of the VFW. The deed was recorded on January 26, 2005.

Prior to these transfers, third parties sought and obtained a $135,000.00 civil judgment against Debtor.  Action Properties and Philsax were both served with writs of garnishment. However, the transferring of Action Properties's and Philsax's assets rendered both corporations insolvent and the civil judgment creditors did not receive any payment.

### B.  Certified Question

In his certification order, Judge John L. Kane requested that this court exercise its original jurisdiction and determine whether Colorado law permits a creditor or shareholder of a corporation to reverse pierce through the corporate veil and reach the assets of a corporation to cover the debts of a

dominant shareholder.[1] The order also declared that "no controlling precedent [on] this issue has been determined by the Colorado Supreme Court" and the determination of the questions of law "will be determinative of the matter pending before [the federal district] Court."

We accepted jurisdiction.

## II.  Analysis

Previously, this court has not addressed whether Colorado law permits a court to reverse pierce the corporate veil and obtain funds from the corporation for the debts of a dominant shareholder or other corporate insider.  While we generally do not review issues of law without the benefits of a full factual record, there are many exceptions to this doctrine.  For

---

[1] Certification was requested on the following question of law: Under Colorado law and with respect to the alter ego doctrine, may a creditor of a shareholder of a closely held corporation and/or another shareholder of the closely held corporation "reverse pierce" the corporate veil of the closely held corporation to fasten liability on and thereby eventually reach the assets of the corporation owned by the shareholder?  Such question is asked under circumstances where the creditor of a shareholder or another shareholder of the closely held corporation is seeking to avoid fraudulent conveyances of property of the closely held corporation where it is determined to be the alter ego of the shareholder; where there are no innocent third party creditors of the closely held corporation (other than the creditor seeking to pierce the corporate veil); there are no other non-culpable shareholders of the corporation; the shareholder is the party against which the doctrine is being invoked; and, such shareholder is the actor in a course of conduct constituting an abuse of the corporate privilege.

example, this court has the discretion to accept interrogatories
from the legislature and certified questions of law from the
federal courts.  See Common Sense Alliance v. Davidson, 995 P.2d
748, 749 (Colo. 2000); In re Submission of Interrogatories on
House Bill 99-1325, 979 P.2d 549, 551 (Colo. 1999).  Even though
we may accept certified questions that lack a developed factual
record, we are disinclined to adopt a new principle of law in
any context other than an appeal.  In this case, however, we
recognize that the United States Court of Appeals for the Tenth
Circuit prohibits reverse piercing of the corporate veil absent
a clear expression of state law by a state appellate court.
Cascade Energy & Metals Corp. v. Banks, 896 F.2d 1557, 1577
(10th Cir. 1990).  Accordingly, unless this court speaks to the
reverse piercing issue, our failure to address the issue here
would be tantamount to a refusal to adopt the doctrine as to
this claimant and all future claimants until such time as an
appeal before this court is taken.  Due to the effect on
Petitioner and all similarly situated future claimants we agreed
to consider reverse piercing in a certified question.

## A.  Traditional Piercing of the Corporate Veil

Although Colorado has not previously recognized the reverse
piercing doctrine, Colorado does permit traditional piercing of
the corporate veil in extraordinary circumstances.  Leonard, 63
P.3d at 330.  The concepts of traditional veil piercing aid in

9

our determination of whether reverse piercing is permitted under
Colorado law.  We review them briefly.

Generally, a duly formed corporation is treated as a
separate legal entity, unique from its officers, directors, and
shareholders.  Id.; Micciche v. Billings, 727 P.2d 367, 372
(Colo. 1986) (citing Krendl & Krendl, Piercing the Corporate
Veil: Focusing the Inquiry, 55 Den. L.J. 1 (1978)).  This
separate status isolates the actions, profits, and debts of the
corporation from the individuals who invest in and run the
entity.  Micciche, 727 P.2d at 369 (citing H. Henn & J.
Alexander, Laws of Corporations 144-46 (3d ed. 1983)).
"Insulation from individual liability is an inherent purpose of
incorporation" and personal liability of shareholders is
normally limited to their investments in the enterprise.
Leonard, 63 P.3d at 330.  Thus, the corporate veil protects
shareholders from individual liability for the actions of the
corporation.

Traditional piercing penetrates the corporate veil and
imposes liability on individual shareholders for the obligations
of the corporation.  Contractors Heating & Supply Co., 163 Colo.
at 587-88, 432 P.2d at 239.  Individual liability is appropriate
when the corporation is merely the alter ego of the shareholder,
Great Neck Plaza, L.P. v. Le Peep Rest., L.L.C., 37 P.3d 485,
490 (Colo. App. 2001), and the corporate structure is used to

10

perpetuate a wrong.  Micciche, 727 P.2d at 373.  In such

extraordinary circumstances, the courts may ignore the

independent existence of the business entity and pierce the

corporate veil to achieve an equitable result.  Leonard, 63 P.3d

at 330; Water, Waste & Land, Inc. v. Lanham, 955 P.2d 997, 1004

(Colo. 1998).

    To determine whether piercing the corporate veil is

appropriate, the court must first inquire into whether the

corporate entity is the alter ego of the shareholder.  Only then

will actions ostensibly taken by the corporation be considered

acts of the shareholder.  An alter ego relationship exists when

the corporation is a "mere instrumentality for the transaction

of the shareholders' own affairs, and there is such unity of

interest in ownership that the separate personalities of the

corporation and the owners no longer exist."  Krystkowiak v.

W.O. Brisben Co., Inc., 90 P.3d 859, 867 n.7 (Colo. 2004)

(internal quotations omitted) (quoting Gude v. City of Lakewood,

636 P.2d 691, 697 (Colo. 1981)).

    In establishing whether such unity of interest exists as to

disregard the corporate fiction and treat the corporation and

shareholder as alter egos, courts consider a variety of factors,

including whether (1) the corporation is operated as a distinct

business entity, (2) funds and assets are commingled,

(3) adequate corporate records are maintained, (4) the nature

and form of the entity's ownership and control facilitate misuse by an insider, (5) the business is thinly capitalized, (6) the corporation is used as a "mere shell," (7) shareholders disregard legal formalities, and (8) corporate funds or assets are used for noncorporate purposes. Leonard, 63 P.3d at 330 (citing Newport Steel Corp. v. Thompson, 757 F. Supp. 1152, 1156 (D. Colo. 1990)). These factors reflect the underlying principle that the court should only pierce when the corporate form has been abused.

The court's second inquiry is whether justice requires recognizing the substance of the relationship between the shareholder and corporation over the form because the corporate fiction was "used to perpetrate a fraud or defeat a rightful claim." Contractors Heating & Supply Co., 163 Colo. at 588, 432 P.2d at 239. Only when the corporate form was used to shield a dominant shareholder's improprieties may the veil be pierced.

Third, the court must evaluate whether an equitable result will be achieved by disregarding the corporate form and holding the shareholder personally liable for the acts of the business entity. Water, Waste & Land, Inc., 955 P.2d at 1004. Achieving an equitable result is the paramount goal of traditional piercing of the corporate veil. A claimant seeking to pierce the corporate veil must make a clear and convincing showing that

each consideration has been met.  Contractors Heating & Supply Co., 163 Colo. at 588, 432 P.2d at 239.

### B.  Reverse Piercing

To prevent abuse, Colorado law permits trial courts to disregard the corporate form and pierce the corporate veil when a corporation and a shareholder are alter egos of each other. Leonard, 63 P.3d at 330.  Here, we are asked to expand this principle to disregard the corporate fiction and allow liability to be imposed on the corporation for acts of a dominant shareholder or other corporate insider.

Reverse piercing occurs when a claimant seeks to hold a corporation liable for the obligations of an individual shareholder.  Zahra Spiritual Trust, 910 F.2d at 244.  Two types of reverse piercing exist: inside and outside claims.  Floyd v. IRS, 151 F.3d 1295, 1298 (10th Cir. 1998).

Inside claims involve a "controlling insider who attempts to have the corporate entity disregarded to avail the insider of corporate claims against third parties" or to protect corporate assets "from third party claims that are available only for assets owned by the insider."  Gregory S. Crespi, The Reverse Pierce Doctrine: Applying Appropriate Standards, 16 J. Corp. L. 33, 37 (1990); see generally Floyd, 151 F.3d at 1298.  Inside reverse piercing claims allow a shareholder to disregard the corporate form of which he or she is a part.

13

Outside reverse piercing claims occur when a corporate outsider "pressing an action against a corporate insider seeks to disregard the corporate entity [and] to subject corporate assets to the claim" or when an outsider "with a claim against a corporate insider seeks to assert that claim against the corporation in an action between the claimant and the corporation." Crespi, supra at 55; see C.F. Trust, Inc. v. First Flight Ltd. P'ship, 580 S.E.2d 806, 810 (Va. 2003). Outside reverse piercing actions involve a corporate outsider seeking to obligate a corporation for the debts of a dominant shareholder or other corporate insider.

Although the certified question of law could be read to encompass both inside and outside reverse piercing claims, we limit our review to outside claims due to the facts presented in this case. Here, Appellant, an outsider to Philsax, seeks to hold the corporation liable for the obligations of Debtor. Accordingly, we turn to whether Colorado law permits outside reverse piercing of the corporate veil.

Admittedly, the corporate interests at stake in traditional and outside reverse piercing differ, as does the entity pierced. In traditional veil piercing, the veil shields a shareholder who is abusing the corporate fiction to perpetuate a wrong. In outside reverse piercing, however, the corporate form protects the corporation which, through the acts of a dominant

14

shareholder or other corporate insider, uses the legal fiction
to perpetuate a fraud or defeat a rightful claim of an outsider.
While traditional and outside reverse piercing affect diverse
corporate interests, the purposes sought to be achieved are
similar.

Both types of piercing strive to achieve an equitable
result.  See generally Water, Waste & Land, Inc., 955 P.2d at
1004.  In traditional piercing, equity requires the veil be
pierced to impose liability on a shareholder who has abused the
corporate form for his or her own advantage.  See Great Neck
Plaza, L.P., 37 P.3d at 490.  Similarly, in outside reverse
piercing, an equitable result is achieved by ignoring the
corporate fiction to attach liability to the corporation.
"Indeed, it is particularly appropriate to apply the alter ego
doctrine in 'reverse' when the controlling party uses the
controlled entity to hide assets or secretly to conduct business
to avoid the pre-existing liability of the controlling party."
LFC Marketing Group, Inc. v. Loomis, 8 P.3d 841, 846 (Nev. 2000)
(internal quotations omitted) (citing Select Creations, Inc. v.
Paliafito Am., Inc., 852 F. Supp. 740, 774 (E.D. Wis. 1994)).
Thus, the purpose of obtaining a just result is furthered by
permitting outside reverse piercing in Colorado.

Due to the similarities and parallel goals achieved in
outside reverse piercing and traditional piercing, we hold that

Colorado law permits outside reverse piercing when justice so requires.[2]

We recognize that some jurisdictions refuse to allow outside reverse piercing of the corporate form because, when inartfully performed, outside reverse piercing has the potential to prejudice innocent shareholders and creditors, and to bypass normal judgment procedures. See, e.g., Cascade Energy & Metals Corp., 896 F.2d at 1577. As will be explained fully in subsection C, however, this concern is effectively alleviated by the requirement that piercing obtain an equitable result.

We further note that a significant number of jurisdictions also recognize outside reverse piercing. See, e.g., McCall Stock Farms, Inc. v. United States, 14 F.3d 1562, 1568 (Fed. Cir. 1993); Towe Antique Ford Found. v. IRS, 999 F.2d 1387, 1390-94 (9th Cir. 1993); Zahra Spiritual Trust, 910 F.2d at 244; Esudios, Proyectos e Inversiones de Centro America, S.A. v. Swiss Bank Corp., 507 So. 2d 1119, 1120-21 (Fla. App. 1987); Minich v. Gem State Developers, Inc., 591 P.2d 1078, 1084 (Idaho 1979); Lambert v. Farmers Bank, Frankfort, Ind., 519 N.E.2d 745 (Ind. App. 1988); Central Nat'l Bank & Trust Co. of Des Moines v. Wagener, 183 N.W.2d 678, 681-82 (Iowa 1971); LFC Mktg. Group,

---

[2] We make no conclusion as to whether inside reverse piercing is allowed under Colorado law and, if permitted, what factors would be utilized by the courts in determining if piercing is appropriate.

_Inc._, 8 P.3d at 846; _Zisblatt v. Zisblatt_, 693 S.W.2d 944, 955
(Tex. App. 1985); _C.F. Trust, Inc._, 580 S.E. 2d at 810; _W. G._
_Platts, Inc. v. Platts_, 298 P.2d 1107, 1110-11 (Wash. 1956).

### C.   Outside Reverse Piercing in Colorado

Having concluded that outside reverse piercing is
appropriate, we proceed to discuss the limitations of the
doctrine.  A court may reverse pierce the corporate veil and
obtain the assets of a corporation for the obligations of a
controlling shareholder or other corporate insider only upon a
clear showing that (1) the controlling insider and the
corporation are alter egos of each other, _Great Neck Plaza,_
_L.P.,_ 37 P.3d at 490, (2) justice requires recognizing the
substance of the relationship over the form because the
corporate fiction is utilized to perpetuate a fraud or defeat a
rightful claim, _Contractors Heating & Supply Co._, 163 Colo. at
588, 432 P.2d at 239, and (3) an equitable result is achieved by
piercing, _Micciche_, 727 P.2d at 373.  Only when a claimant makes
a clear showing of each factor may the corporate form be
disregarded.  _Contractors Heating & Supply Co._, 163 Colo. at
588, 432 P.2d at 239.

Generally, in determining whether to outside reverse pierce
the corporate veil, a court should review the same factors
utilized in determining whether traditional veil piercing is
appropriate.

Here, the first factor to consider is whether Debtor and Philsax were alter egos of each other.   In making this determination, our analysis suggests the Debtor's control over Philsax is relevant.   Debtor removed and added directors without board approval and used the sale of corporate property to pay for his personal expenses.   Margaret M. Phillips, the other shareholder, could not explain her role in the corporation. Also significant is Philsax's failure to operate as a distinct business entity, including the lack of a bank account and the intermingling with Action Properties and Debtor's personal affairs.   Indeed, Action Properties and Margaret M. Phillips were paid for the sale of Philsax's property.   Furthermore, Philsax's failure to observe many of the corporate formalities is germane; specifically the entity had no written bylaws, did not provide notice to directors or shareholders of board meetings, and did not maintain any written financial statements.

The second factor to review is whether justice requires recognizing the substance of the relationship between Debtor and Philsax over the form.   Relevant to this inquiry is whether Philsax transferred its assets to defeat a third party judgment against Debtor.

The third determination is whether an equitable result would be achieved by piercing.   As previously alluded to, some

additional equitable considerations apply in the outside reverse piercing context.

When innocent shareholders or creditors would be prejudiced by outside reverse piercing, an equitable result is not achieved. Innocent shareholders possess legitimate expectations that corporate assets will be insulated from the claims of a controlling insider's creditors. Similarly, secured and unsecured creditors of the corporation have a cognizable legal interest in corporate assets, upon which they relied in lending money and selling goods and services to the corporation. Accordingly, equity requires that innocent shareholders and creditors be adequately protected before outside reverse piercing is appropriate under Colorado law.

As pertinent here, Debtor identified the creditors of Philsax as identical to his personal creditors. The corporation has no other creditors. As the creditors of the entity are those of the Debtor, no creditors would be injured by outside reverse piercing. Our analysis does suggest, however, that if innocent shareholders would be prejudiced piercing would not be warranted.

Furthermore, as piercing the corporate veil is an extraordinary remedy, see Leonard, 63 P.3d at 330, the availability of alternative, adequate remedies must be considered by the trial court. See C.F. Trust, Inc., 580 S.E.2d

at 811.  These remedies may include, but are not limited to,
conversion, fraudulent conveyance of assets, respondeat
superior, and agency law.  See generally Cascade Energy & Metals
Corp., 896 F.2d at 1577.  When a less invasive, adequate remedy
is available, outside reverse piercing is discouraged.

In summation, we conclude that outside reverse piercing is
appropriate when a claimant demonstrates that a controlling
insider and a corporation are alter egos of each other and
justice requires recognizing the substance of that relationship
over the form to achieve an equitable result.  An equitable
result is not achieved when innocent shareholders or creditors
are prejudiced by outside reverse piercing.  Additionally, a
court should avoid outside reverse piercing when alternative,
adequate remedies are available.  In light of these limitations,
this decision is unlikely to impact many business entities other
than a limited number of closely held corporations with few
shareholders or only a single shareholder.

### III.   Conclusion

In conclusion, we hold that Colorado law permits outside
reverse piercing claims when a dominant shareholder and
corporation are alter egos of each other and justice requires
that the trial court disregard the corporate form to achieve an
equitable result.  Accordingly, we answer the certified question
in the positive and return this opinion to the United States

District Court for the District of Colorado for further
proceedings.

JUSTICE EID, dissenting.

The majority acknowledges that this Court is "disinclined to adopt a new principle of law in any context other than an appeal," maj. op. at 9, which has "the benefit[] of a full factual record." Maj. op. at 8.  It nevertheless proceeds to adopt reverse veil-piercing liability in the context of this certified question of law.  Because I think that this is an inappropriate case in which to adopt this new form of liability that would permit a shareholder's creditors to reach corporate assets, I respectfully dissent.

There are good reasons not to decide cases without a full factual record, and those reasons are even more applicable when adopting a new form of liability.  See, e.g., City and County of Denver v. Consolidated Ditches Co., 807 P.2d 23, 38 (Colo. 1991) ("A court ... should avoid [providing] an advisory opinion on an abstract proposition of law, particularly when the trial record is virtually devoid of any evidentiary basis for an ultimate legal conclusion.").  Facts enable the Court to consider how the doctrine works in context, rather than in isolation.  As has been noted by the United States District Court for the District of Colorado, the court from which the issue in this case was certified, "[t]he laws as to when the courts will pierce the corporate veil are easy to state, but hard to apply." Shamrock Oil & Gas Co. v. Ethridge, 159 F. Supp. 693, 696 (D. Colo. 1958)

(internal quotations omitted).  Indeed, in at least one case addressing traditional veil-piercing, we have declined to apply the doctrine "[i]n the absence of a fully developed factual record and adequate findings of fact."  Micciche v. Billings, 727 P.2d 367, 373 (Colo. 1986).  I can see no reason why reverse veil-piercing should be treated differently.

The record in this case is far from the "fully developed factual record" contemplated by Micciche.  The trustee filed an adversary action in connection with the bankruptcy proceeding, in which he sought to avoid certain property transfers made by both Debtor Phillips and Philsax, Inc., a corporation in which Phillips is the dominant shareholder.  The defendants in that adversary proceeding defaulted.  The bankruptcy court entered a default judgment against Debtor Phillips, but refused to enter a default judgment against Philsax because there was no clear Colorado precedent allowing reverse veil-piercing.  Accordingly, the bankruptcy court made no findings of fact or conclusions of law regarding issues relevant to reverse veil-piercing.  The bankruptcy court specifically noted that it did not need to decide factual issues relating to reverse veil-piercing because it dismissed the reverse veil-piercing claims against the corporation as a matter of law.  The trustee appealed that order to the federal district court, which was similarly unwilling to

2

proceed without a determination that Colorado would actually adopt the new theory of liability.

We thus find ourselves in the position of deciding whether Colorado should recognize a significant new form of liability without a fully developed factual record. Moreover, as counsel for the trustee conceded, both in the briefing and at oral argument, reverse veil-piercing may not even be applicable in this case because it is unclear whether the corporation holds the assets the trustee is trying to reach. In other words, while the majority answers the federal district court's certified question in the affirmative, it is possible that its answer may have no impact in this case.

The majority attempts to deal with the slim factual record in this case in two ways, neither of which cures the problem. First, the majority offers up a veritable feast of facts drawn from the certification order. Maj. op. at 4-7. Yet there is an important distinction between facts and relevant facts. Here, the bankruptcy court expressly refused to engage in the fact-finding necessary to support reverse veil-piercing until it was certain that the theory was recognized in Colorado.

Then the majority compounds its error by doing the bankruptcy court's job itself, applying the factors of its newly-minted reverse piercing theory to the "facts" of this case. See maj. op. at 18-19. If anything, the majority's

application of reverse piercing simply makes matters worse because it limits the bankruptcy court's ability to do its own fact-finding on remand.  See, e.g., Garman v. Conoco, Inc., 886 P.2d 652, 654 n.4 (Colo. 1994) ("Pursuant to C.A.R. 21.1 we 'may answer a question of law certified [to this court if there are] . . . questions of law of this State which may be determinative of the cause then pending before the certifying court.'  We believe the [Plaintiffs'] request that we apply the law to the facts now before the federal district court exceeds the scope of the certified question.").

The posture of this case differs significantly from that of C.F. Trust, Inc. v. First Flight Limited Partnership, 580 S.E.2d 806 (Va. 2003), in which the Virginia Supreme Court adopted reverse veil-piercing on a certified question from the Fourth Circuit.  In that case, the federal district court had conducted a four-day bench trial to determine the facts relating to whether an individual had treated a corporation as an alter ego. See id. at 808.  The district court ultimately concluded "that C.F. Trust and Atlantic Funding had 'conclusively established the grounds necessary to support piercing the corporate veil in reverse.'"  Id. at 809 (citations omitted).  Here, by contrast, there was no such "conclusive[]" fact-finding.

The second way in which the majority attempts to deal with the lack of factual record in this case is by defining the

doctrine of reverse veil-piercing narrowly.   In particular, it limits claims of reverse veil-piercing to "outside" claims, maj. op. at 14; states that the three elements of the doctrine – that (1) the shareholder and corporation are alter egos of one another, (2) justice requires recognizing the substance of the relationship over the form because the corporate fiction is being used to perpetrate a fraud or defeat a rightful claim, and (3) an equitable result is achieved by reverse piercing – must be evidenced by a "clear showing," id. at 17; explains that an "equitable result" would not be achieved when "innocent shareholders or creditors" are harmed, id. at 19; and instructs courts to consider alternative remedies before permitting reverse veil-piercing.   Id. at 20.   These limitations, however, simply demonstrate the majority's apparent discomfort in adopting this new form of liability in the absence of relevant fact-finding by the federal courts.

Reverse veil-piercing could have a significant impact on the legal landscape in Colorado. "Generally, a corporation is treated as a legal entity separate from its shareholders." Micciche, 727 P.2d at 372.   Thus, the corporate form protects the corporation from risks associated with individual shareholders.   A shareholder's creditors can only reach stock issued to and owned by shareholders; corporate assets are shielded.   See, e.g., Cascade Energy & Metals Corp. v. Banks,

896 F.2d 1557, 1577 (10th Cir. 1990) (noting that reverse veil-piercing "bypasses normal judgment-collection procedures, whereby judgment creditors attach the judgment debtor's shares in the corporation and not the corporation's assets"). If reverse veil-piercing is permitted, however, the corporation becomes liable for the debts of one (or more) of its shareholders. Accordingly, reverse piercing can prejudice other shareholders and creditors by reducing corporate assets. See, e.g., id.; Floyd v. IRS, 151 F.3d 1295, 1299 (10th Cir. 1998); Gregory S. Crespi, The Reverse Pierce Doctrine: Applying Appropriate Standards, 16 J. Corp. L. 33, 56-64 (1990).

The majority believes that it has taken care of this problem by stating that "equity requires that innocent shareholders and creditors be adequately protected before outside reverse piercing is appropriate under Colorado law." Maj. op. at 19. It is true that a court may be able to protect particular "innocent" shareholders and creditors after a reverse veil-piercing claim has been brought. But after today's ruling, assets of Colorado corporations could be subject to reverse veil-piercing at some time in the future. The recognition of reverse veil-piercing in Colorado will significantly affect (1) the expectations of shareholders with regard to the risks and liabilities to which their investment might be exposed, and hence that investment's value; and (2) the expectations of

creditors with regard to the risks to and security of their collateral.  There is a significant and fundamental difference between traditional veil-piercing, which allows parties to reach individual assets, and reverse veil-piercing, which permits parties to reach corporate assets.

Given that the effect on the expectations of Colorado corporate shareholders and creditors could be substantial, I am unwilling to adopt reverse veil-piercing in a contextual void. Colorado corporate law has operated without reverse veil-piercing liability until now, and it can continue to do so until an appropriate case is brought before us to consider the issue. I therefore respectfully dissent.

I am authorized to state that JUSTICE RICE and JUSTICE COATS join in this dissent.